## BRISTOL MANUFACTURING COMPANY *vs.* SILAS R. GRIDLEY.

An assessor of a town altered an assessment list after it had been perfected and lodged with the town clerk, and after his power over it had ceased, in such a manner that the property of the plaintiffs was rated at a higher sum than before the alteration. The selectmen of the town afterwards made out a rate bill, in which the plaintiffs were charged with the increased amount, and procured a tax warrant which they placed in the hands of a collector. The collector levied on the property of the plaintiffs, who paid the tax under protest, to save their property from sale under the warrant. In an action on the case for the damage, brought against the assessor, in which the plaintiffs declared that the defendant made the alteration unlawfully, fraudulently and maliciously, and on the trial of which the defendant claimed that he did it in good faith, for the purpose of correcting an error and upon the advice of his associate assessor, the judge charged the jury that the plaintiffs could not recover unless they had proved actual malice. Held that the charge was erroneous, the law inferring malice from the unlawfulness of the act.

ACTION on the case for damage to the plaintiffs, caused by an illegal alteration of an assessment list by the defendant, by which the amount of their tax was increased.

The plaintiffs in their declaration alleged that by the assessment list of the town of Bristol, for the year 1852, as prepared by the assessors and approved by the board of relief of said town, duly returned as a perfected list into the office of the town clerk of said town, the property of the plaintiffs liable to assessment was valued as follows: (giving the details,) making the value of the whole taxable property of the plaintiffs the sum of $41,200, all of which was rated in said assessment list, as is provided by law, at three per cent. on said valuation, said three per cent. on said valuation amounting to the sum of $1,236, and was so entered in said assessment list:—that said assessment list was so returned into the office of the town clerk, as a perfected list, on the 24th day of February, 1853:—that after said list was so returned, to wit, on the 25th day of February, 1853, the defendant, intending to have the plaintiffs cheated and defrauded, and for the purpose of compelling them to pay a larger sum than by said assessment they would be required to do, maliciously, falsely and fraudulently, and without color of right, altered said rate,

from the said sum of $1,236 to the sum of $1,735:—that afterwards the tax book predicated upon said assessment was duly made out by the selectmen of the town of Bristol, and the said amount of $1,735 entered in said tax book as the ratable amount upon which the taxes against the plaintiffs were to be computed:—that at the annual town meeting of the town of Bristol, held on the first Monday of October, 1852, by vote of said town, a tax was laid on said assessment list of eight cents on the dollar:—that at the ratable amount of $1,236, as returned by said perfected list, the legal tax against the plaintiffs would have been the sum of $98.88:—that the tax, as in fact made out by said selectmen, on said tax book, on said sum of $1,735, amounted to the sum of $138.80, being an excess beyond the legal tax against the plaintiffs, caused by said false and fraudulent alteration of said assessment list by the defendant, of the sum of $39.92: that said tax book, so made out by said selectmen, with a tax upon the same against the plaintiffs purporting to be for said sum of $138.80, was placed in the hands of Alonzo Warner, then the legal collector of taxes of said town of Bristol, for the collection thereof:—that on the 29th day of September, 1853, they paid to said collector, on said tax, the said sum of $98.88, being the whole amount that they would have been liable to pay by said assessment list, before the same had been falsely and fraudulently altered by the defendant as aforesaid:—that afterwards, on the 17th day of October, 1855, the said collector made demand on the plaintiffs for the payment of said further sum of $39.92, and on their refusal to pay the same, levied, for the payment thereof, on two hundred yards of satinets, the property of the plaintiffs, and posted the same on the public sign post of the town of Bristol:—that afterwards, on the 27th day of October, 1855, the plaintiffs, to prevent loss on the property so levied on, paid under protest to said collector said sum of $39.92, together with the further sum of two dollars costs, amounting, in the whole, to the sum of $41.92:—and that, by reason of said malicious, false and fraudulent alteration of said assessment list by the defendant, they had wrongfully

been compelled to pay said sum of $39.92, and said sum of two dollars, costs, as aforesaid; and had been otherwise put to great trouble and expense by reason of said wrongful and illegal act of the defendant.

The defendant pleaded the general issue, without notice of any special matter of defence. On the trial the plaintiffs introduced evidence tending to prove and claimed that they had proved the material allegations of their declaration. The defendant thereupon offered evidence to prove that at the annual town meeting of the town of Bristol held in October, 1852, he and Tracy Peck were chosen assessors for the town for the year then next ensuing, and were the only assessors in said town; that they accepted the office, took the oath prescribed by law, and entered upon the duties of the office; that as said assessors they completed and lodged the assessment list of the town in the office of the town clerk on the 24th day of February, 1853; that afterwards the said Tracy Peck and the defendant had an interview, at which the subject of the plaintiffs' assessment was considered, and it was then understood and believed by them both that they had made a mistake in the valuation of the plaintiffs' property; and that the said Tracy Peck then gave to the defendant figures, which the said Peck claimed to have received from the agent of the plaintiffs, being a true estimate of their taxable property, and requested him, the defendant, to go to the town clerk's office and alter the plaintiffs' assessment list according to said figures; and that the defendant thereupon did, on the 25th day of said February, go to said office and make the alteration as requested, which was the same alteration claimed by the plaintiffs. To the admission of this evidence the plaintiffs objected, because the defendant had not given notice of any justification, because it was not admissible under the general issue without notice in mitigation of damages, and because the interview between Tracy Peck and the defendant was not in the presence of the plaintiffs or their agent. But the court overruled the objection and received the evidence in mitigation of damages.

The plaintiffs claimed, and requested the court to instruct

the jury, that, if they should find that the defendant made the alteration in the plaintiffs' list, as claimed by them, after the same had been perfected and lodged in the office of the town clerk as a perfected list, such act was unlawful, and one from which malice should be inferred, and that it was not necessary for the jury to find actual malice on the part of the defendant, in order to return a verdict for the plaintiffs, but only such legal malice as was to be inferred from the unlawful act of the defendant. The plaintiffs also claimed, and asked the court to instruct the jury, that the evidence introduced by the defendant was received by the court only in mitigation of damages, and could be used by them for no other purpose.

The court charged the jury as follows: "I am clearly of the opinion that the power of Mr. Gridley as an assessor in relation to this list, so far as he had any right to alter the same, ceased when he lodged it with the town clerk, and that if he made the alteration afterwards the act was unlawful. But it does not necessarily follow that malice is to be inferred from the act, that is, malice not implied in every unlawful act. It does not follow that because the act is unlawful it is also criminal. If it was a criminal act, malice might be inferred. In a legal sense, any unlawful act done willfully and purposely to the injury of another is, as against that person, malicious. Here malice is a question of fact for the jury. The proof of malice need not be direct, it may be inferred from circumstances. You are to take into consideration all the circumstances attending the whole transaction, as well as the act itself, and from the whole you are to say whether the plaintiff has sustained the allegations in his declaration, in which he has charged the defendant with having done the act maliciously, fraudulently, and without color of right."

The jury came into court before they rendered their verdict, and inquired if they were to understand from the charge of the court that they were to find actual malice on the part of the defendant, in order to find a verdict for the plaintiff. The judge said to them that he did intend to be understood

that the jury must find, from all the circumstances of the case, actual malice to justify a verdict for the plaintiffs.

The jury returned a verdict for the defendant, and the plaintiffs moved for a new trial for error in the charge and in the admission of evidence.

*Mitchell* and *Johnson*, in support of the motion.

1. The defendant, under the plea of the general issue without notice, could not give in evidence any matter of defence consistent with the truth of the material allegations in the declaration, and therefore could not show that in altering the list of the plaintiffs he acted under color of his authority as assessor. Rev. Stat., tit. 1, § 90. 1 Chitty Pl., 518. *Bolton* v. *Cummings*, 25 Conn., 410. If such evidence was admissible for any purpose it could only be received in mitigation of damages, and the judge should have so charged the jury. Evidence of the interview between Peck and the defendant was strictly hearsay and not admissible.

2. The act of the defendant in altering the list being admitted and also being unlawful, it was not necessary for the plaintiff to prove that the defendant was guilty of actual malice. Legal malice will be inferred from an unlawful act operating to the injury of another, though such act is not criminal. The allegation of intent is merely formal. The law supplies the proof. 1 Chitty Pl., 130, 389, 390. 4 Phillips' Ev., C. & H., 245. *The King* v. *Philipps*, 6 East, 464. *Commonwealth* v. *York*, 9 Met., 104. *Commonwealth* v. *Snelling*, 15 Pick., 340.

*L. F. Robinson*, contra.

1. The plaintiffs' allegations of malice were material, and were put in issue by the defendant's general denial. All the evidence offered to repel such averments was admissible under the general issue. Rev. Stat., tit. 1, § 90. Erroneous official acts are not actionable unless prompted by a bad motive. *Callen* v. *Morris*, 2 Stark., 577. *Pater* v. *Baker*, 3 Mann., Grang. & Scott, 831. *Holcomb* v. *Cornish*, 8 Conn., 375.

2. Where malice is an essential ingredient in a cause of action, it presents a question of fact to be determined by the jury. *Owen* v. *Legh*, 3 Barn. & Ad., 470. *Mitchell* v. *Jenkins*, 5 id., 588. *De Medina* v. *Grove*, 10 Adol. & El., 152. *Stokeley* v. *Hornidge*, 8 C. & P., 11. *Lewis* v. *Morris*, 2 Cr. & Mees., 712. Even an act implying malice may not furnish conclusive proof of its existence. The jury were properly directed on this point.

3. The jury were properly instructed that they must inquire for actual malice. Even if they should find it upon presumptive testimony, it was their duty to be satisfied that the defendant was actuated by real malice, a really bad intent. The suggestion that there is such a thing as technical malice, imputable by law to particular acts, when there is no proof, direct or presumptive even, of a really bad intent, is unwarrantable. *Vanderbilt* v. *Mathis*, 5 Duer, 304. *Bromage* v. *Prosser*, 4 Barn. & Cress., 247. The proposition that every unlawful act is legally malicious would involve endless absurdities. It would render the alteration in the plaintiffs' list by the assessor, even with the plaintiffs' consent, *per se* malicious. An act must be intentionally wrong in order to furnish an inference of malice. *Pryce* v. *Belcher*, 4 Mann., Grang. & Scott, 866.

HINMAN, J. This was an action upon the case for fraudulently altering the assessment list of the town where the plaintiffs' corporation was established, after it was perfected and lodged with the town clerk. The alteration consisted in increasing the amount of the valuation of the plaintiffs' property, to such an extent that their tax was increased about forty dollars beyond what it would have amounted to by the actual assessment as it was perfected and returned to the town clerk's office; and the plaintiffs were compelled to pay the increased tax, in order to save their property, which was levied upon by the collector, from being sold at the post under the collector's tax warrant.

The declaration alleges the alteration to have been made maliciously, falsely and fraudulently, and without color of

right; and the superior court was of opinion that, although the alteration was illegally and improperly made, without color of right, the allegation that it was *maliciously* made was a material one, which must be proved to the satisfaction of the jury in order to justify a verdict for the plaintiffs. The jury were therefore told that they must find actual malice in order to justify such a verdict, and it is obvious that by this expression, "actual malice," the jury must have understood that something more was meant than the intentional and unauthorized and unlawful alteration of the list to the injury of the plaintiffs, because they were told that, although the act was unlawful and improper, it did not necessarily follow from it that malice was to be inferred, and that malice was not to be implied from every unlawful act.

It is true, undoubtedly, that if the list had been altered by the assessors before their powers over it had ceased by its completion and return to the town clerk's office as a perfected list, they could not be made liable for any erroneous valuation of the property of a tax-payer, unless they were guilty of maliciously doing it from some such unworthy motive as is imputed to the defendant in this declaration. The case of the surveyor of highways, who acted from an incorrect view of his duty, would undoubtedly apply to such a case. *Pater* v. *Baker*, 3 Mann., Grang. & Scott, 831. But after the list was perfected and returned to the clerk's office, the persons who, as assessors, had perfected and returned it, had no more power over it than any stranger. And we think it is all they can claim, if the fact that they had, as assessors, made the list which they afterwards assumed to alter, is suffered to be shown in mitigation of damages. We think, therefore, that the action can not be treated as one against an officer, for something done or omitted under color or in discharge of his office, and the cases cited by the defendant relating to such a state of facts have consequently no application to it. Nor is it an action for a malicious prosecution, or a malicious use of legal process. Nor is it in the nature of any such action, or of an action of slander, under circumstances which are *prima facie* a justification of the words. We view it, rather,

as an action for consequential damages, arising from the unlawful alteration of a document, in the security and correctness of which the plaintiffs and all the other tax-payers of the town had a private interest. Now, had it been a private document, as a deed of real estate to the plaintiffs and others, lodged with the town clerk for record, and the defendant, or even any of the grantees, had taken it away or destroyed it, the case of *Hine* v. *Robbins*, 8 Conn., 342, shows that the interest which each of the grantees has in it, and in the record of it, is sufficient to enable him to sustain an action. Yet in the case referred to the plaintiff was deprived of nothing except his right to have his deed recorded. This embarrassed his title, and was a violation of his rights, and therefore entitled him to damages. We do not see why the destruction of the true and only authentic valuation of a tax-payer's property, and the substitution for it of a false and greatly increased valuation, which is directly calculated to cause an unjust tax to be imposed upon him, and to be collected under the form of a lawful tax, is not as substantial an injury as the withdrawal of a deed from the clerk's office before it is recorded. And if this is a document in the correctness of which the plaintiffs have a direct interest, then the alteration of it would seem to be a direct violation of their rights for which they may sustain an action; and such a violation of rights we think a sufficient ground of action, irrespective of the motive under which it was done.

It is said that if malice is not a material allegation the action is misconceived. We do not see what other action the plaintiffs could sustain against this defendant. He did not direct the collector to levy his warrant upon the plaintiffs' property, so as to make him liable in trespass; and had he done so, we do not see that his malicious motives would have made him any less a trespasser, so as to justify the present action. The warrant, being legal upon the face of it, was a justification to the officer, and although the money collected under it might be recovered back from the town, still this might not be as complete a remedy for the invasion of the plaintiffs' rights as the circumstances called for. And

if the present action can not be maintained without proving malice, and an action of trespass will not lie, then the defendant may be guilty of an acknowledged wrong, injurious to the plaintiffs' interests, without any liability therefor. This has not been directly claimed, and, we presume, because it was not thought by counsel that it could properly be.

On the ground, therefore, that the court was wrong in considering the allegation of malice as a material part of the declaration, and necessary to be proved, and so charging the jury, we advise that a new trial be granted.

In this opinion Ellsworth, J. concurred.

STORRS, C. J., while agreeing with the other judges as to the incorrectness of the charge, yet thought that on the facts admitted the action could not be sustained, and that a new trial would therefore be of no benefit to the plaintiffs. He also thought that the plaintiffs themselves, in their request to the court, had taken the ground that malice was to be found by the jury, and ought not therefore to object to the charge. For these reasons he did not concur in advising a new trial.

New trial advised.